IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

STEPHANIE R.,

        **Plaintiff,**

  v.                               Civil Action 3:23-cv-313
                                    Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Stephanie R., brings this action under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 9) and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff protectively filed her application for DIB on April 9, 2021, amending her alleged disability onset date to December 13, 2019, due to fibromyalgia, failed back syndrome, cervicalgia, allergies, asthma, depression, and anxiety. (R. at 188–92, 227, 233). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on October 11, 2022. (R. at 38–63). The ALJ denied benefits in a written decision on October 27, 2022. (R. at 14–37). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on October 13, 2023 (Doc. 1), and the Commissioner filed the administrative record on November 29, 2023. (Doc. 6). The matter has been briefed and is ripe for review. (Docs. 9, 11).

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's statements to the agency and her hearing testimony:

> In the function report, [Plaintiff] stated that she can only walk fifty feet before needing to rest, the time for which varies with the temperature, and can only lift up to twenty pounds (Exhibit B3E). She also has difficulty reaching for things, sitting, hearing, climbing stairs, using her hands, and performing various postural movements (Id.). Despite these limitations, [Plaintiff] is able to take care of her personal needs, dressing, bathing, and grooming, although she needs some help washing her hair and getting out of the bathtub (Id.). She is able to prepare at least simple meals for herself and do some household chores and cleaning (Id.). [Plaintiff] does not require the use of any assistive device for ambulatory support (Id.).
>
> At the October 2022 hearing, [Plaintiff] testified that she is in constant pain, which is primarily situated in her neck but radiates to her shoulders, which causes difficulty walking. Any physical activity aggravates her pain symptoms, can only walk for thirty feet without needing to stop and rest due to "shooting pains," is only able to stand long enough to wash "a couple dishes," and can prepare meals in the microwave. She does not drive long distances because she is uncomfortable if she has to sit for more than approximately fifteen minutes. [Plaintiff] also has difficulty moving her neck in all directions, both due to physical limits and pain, and pain in both upper extremities, which causes difficulty lifting them up. This leaves her unable to wash her hair, and she requires assistance from friends to do so. [Plaintiff] had a spinal cord stimulator implanted, but after a number of attempts with different settings without successful relief, the decision was made to turn the stimulator off. When the stimulator was operating, [Plaintiff] testified that it actually caused her increased pain. She wears a neck brace daily, using it whenever she gets up and moving further than to the restroom. I note, however, that other than in the immediate aftermath of her neck surgery, a prescription or recommendation for the use of a neck brace does not appear in the record.

(R. at 26–27).

B.     **Relevant Medical Evidence:**

The ALJ discussed Plaintiff's medical records and symptoms for her physical impairments:

\*\*\*[Plaintiff]'s spinal condition is substantiated by multiple notations throughout the current medical file. On multiple occasions between at least January 2018 and March 2020, James Dennis McNerney, D.O., noted impressions of cervicalgia, a herniated cervical disc, and right arm muscle weakness (see, for example, Exhibit B3F at 62, 230, 305, 328). This type of muscle weakness is a not uncommon symptom of degenerative spinal conditions.[] On multiple occasions in 2018, Richard John Gorman, Jr., D.O., noted impressions of neck pain and a cervical herniated nucleus pulposus and stenosis (see, for example, Exhibit B3F at 317, 323). On multiple occasions between at least March and September 2018, Daniel Benton Verrill, M.D., noted diagnostic impressions of neck pain and degenerative disc disease, a herniated nucleus pulposus, stenosis, and facet joint arthropathy in the cervical spine, and in one instance, performed a bilateral cervical facet joint injection, noting pre- and post-operative diagnoses of cervical facet arthropathy (see, for example, Exhibit B3F at 289, 313, 314). On multiple occasions between at least May and August 2018, Suzanne Marie Brooks, CNS, noted impressions of neck pain and cervical degenerative disc disease, disc herniation, fact joint arthropathy, and spondylosis with myelopathy (see, for example, Exhibit B3F at 298, 307). In October 2018, Mark Ray Hoeprich, M.D., noted an impression of cervical disc degeneration and neck pain (Exhibit B3F at 278). In December 2018, March 2019, and November 2021, Dr. Hoeprich performed a cervical laminectomy for a spinal cord stimulator placement and revision, noting pre- and post-operative diagnoses of failed back surgical syndrome (Exhibits B3F at 245, 265, B13F at 33). Dr. Hoeprich also noted multiple impressions of cervicalgia and cervical postlaminectomy syndrome between at least May 2019 and February 2021 (see, for example, Exhibit B3F at 88, 159, 172, 214). In May 2019, Jennifer B. Ambos, P.T., conducted a physical therapy evaluation of [Plaintiff] and noted diagnoses of chronic neck pain, stiffness, muscle weakness, and a history of cervical spine surgery (Exhibit B3F at 222-3). In 2019 and 2020, Dr. Verrill recorded multiple additional impressions of neck pain, also noting [Plaintiff] as being status/post stimulator insertion (see, for example, Exhibit B3F at 171, 212). In January 2020, Lauren Aleice Stroud, CNP, noted an impression of failed back syndrome with status/post stimulator placement (Exhibit B3F at 170). In February 2020, Michael P. Brockman, CNP, also assessed [Plaintiff] with failed back syndrome (Id. at 164). On multiple occasions in 2020, Amol Soin, M.D., assessed [Plaintiff] with postlaminectomy syndrome, cervicalgia, cervical and lumbar radiculopathy, and lower back pain (see, for example, Exhibit B1F at 4, 14). In September 2020, Matthew Paul Kiefaber, M.D., examined [Plaintiff] in the emergency department and noted a final impression of acute neck and bilateral back pain (Exhibit B3F at 126). In September 2020, Jamie L. Pearson, CNS, noted an impression of chronic neck and back pain (Exhibit B2F at 49). In November 2020, Lashauna Dene Hall,

3

> CNP, noted an impression of cervicalgia with status/post spinal cord stimulator insertion (Exhibits B3F at 110, B9F at 53). Also in November 2020, Aakash Singh, M.D., reviewed MRI results and noted an impression of mild multilevel cervical disc disease (Exhibit B3F at 383). On multiple occasions between at least December 2020 and July 2022, Julie Weller, CNP, assessed [Plaintiff] with post-laminectomy syndrome, cervicalgia cervical spinal stenosis, and as being status/post stimulator insertion (see, for example, Exhibits B7F at 8, 44, B14F at 3). In March 2022, Abdul Shahid, M.D., performed a cervical epidural injection, noting pre- and post-operative diagnoses of neck pain (Exhibit B10F at 11).
>
> *** Between at least January 2018 and July 2022, multiple treatment providers, including Dr. McNerney, Dr. Verrill, Dr. Soin, Ms. Brooks, Mr. Brockman, Ms. Pearson, and Ms. Weller all noted diagnostic assessments or impressions of a combination of fibromyalgia, chronic pain syndrome, and myofascial pain (see, for example, Exhibits B1F at 4, 9, B2F at 49, 62, B3F at 164, 307, 201, 314, 328, B7F at 8, 44, B14F at 3). Dr. Soin also performed multiple ketamine injections in 2020 with diagnoses of chronic pain syndrome (Exhibit B1F at 17, 25, 33, 41). I could not find evidence of specific references to the presence of a sufficient number of clearly articulated tender points in the medical record, and [Plaintiff] is therefore unable to satisfy the requirements of SSR 12-2p §II(A). [Plaintiff] does meet the requirements of §II(B), however, as she has repeated diagnoses of a sufficient number of symptoms, signs, or co-occurring conditions. Treatment providers including Dr. McNerney, Jennifer K. Clune, M.D., Ewa Kallnowska, M.D., and Mr. Brockman assessed [Plaintiff] with gastroesophageal reflux disease, gastroenteritis, epigastric pain, insomnia, rosacea, and/or bilateral hearing loss between at least January 2018 and April 2022 (see, for example, Exhibits B3F at 62, 164, 230, 308, 322, 328, B15F at 8, 21, B16F at 17). ***

(R. at 24–26).

### D. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through December 31, 2022, and has not engaged in substantial gainful activity since December 13, 2019, her amended alleged onset date of disability. (R. at 20). The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease with status/post cervical fusion, fibromyalgia, asthma, depressive disorder, anxiety disorder, and substance addiction disorder. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment. (R. at 21).

4

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following exceptions: No more than occasional reaching overhead bilaterally. No work at unprotected heights, around moving mechanical parts, or operating a motor vehicle. No more than occasional work in extreme cold, extreme heat, humidity, wetness, dust, odors, fumes, or pulmonary irritants. [Plaintiff] is able to perform simple, routine, and repetitive tasks, and make simple, work-related decisions, but not at a production-rate pace, such as is required for assembly line work. No more than occasional interaction with supervisors, co-workers, and the general public. [Plaintiff] is able to tolerate few changes in a routine work setting.

(R. at 23).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are inconsistent with a finding of disability because, to the extent that her subjective complaints of pain and limitation are consistent with the medical record, and despite the limitations noted above, [Plaintiff] is still able to engage in work that exists in significant numbers in the national economy[.]"  (R. at 28).

The ALJ relied on testimony from a Vocational Expert ("VE") to determine that Plaintiff is unable to perform her past relevant work as a machine operator and management aide position. (R. at 30).  Considering her age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, such as a document preparer, a ticket counter, or an addresser. (R. at 31–32).  Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since December 13, 2019.  (R. at 32).

## II.     STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Olive v. Comm'r of Soc. Sec.*, No. 3:06-cv-1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing 42 U.S.C. § 405(g)); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### III. DISCUSSION

Plaintiff raises a single assignment of error and argues that the ALJ failed to include limitations for off-task time. (Doc. 9 at 3–5). Plaintiff bases this argument on questions posed to the vocational expert at her hearing. (*Id.* at Doc. 4–5, citing R. at 62). The Commissioner counters that the ALJ properly considered Plaintiff's subjective reports about her symptoms, as well as the vocational expert's testimony, and his decision is supported by substantial evidence. (Doc. 11 at 3–7).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ alone is charged with the final responsibility of resolving conflicts in the medical evidence and determining a plaintiff's RFC. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see* 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). In doing so, the ALJ evaluates several factors, including the claimant's testimony, medical evidence, and medical opinions. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-

6

cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). At base, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

"Substantial evidence" for an RFC "may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question[.]" *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007) (internal quotations omitted). "But that rule applies *only* if the ALJ's question accurately portrays a claimant's physical and mental impairments. . . and the ALJ need not identify [Plaintiff's] precise limitations before posing hypothetical questions to the vocational expert." *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019). More still, an ALJ is not bound to include all the hypothetical limitations posed to the vocational expert in the final RFC. *Miller v. Comm'r of Soc. Sec.*, 3:20-cv-506, 2021 WL 4745430, at *3 (S.D. Ohio Oct. 12, 2021) (citing *Kessans*, 768 F. App'x at 536). At base, if the medical record does not support adding such limitations, the ALJ does not err by not including all limitations posed to the vocational expert. *Beckham v. Comm'r of Soc. Sec.*, 1:19-cv-576, 2020 WL 5035451, at *9 (S.D. Ohio Aug. 26, 2020).

During Plaintiff's hearing, the ALJ posed questions regarding off-task time to the vocational expert. (R. at 62). In response, the vocational expert testified that employers typically tolerate up to 10 percent of the workday off-task and one unexcused absence a month. (*Id.*). When crafting Plaintiff's RFC, the ALJ did not include any limitations for off-task time or unexcused absences from work. (R. at 23). Plaintiff says that because she "suffers daily from pain," the ALJ erred in not including such limitations. (Doc. 9 at 4).

Notably, Plaintiff does not challenge the ALJ's credibility determination, and this Court must defer to that determination. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (stating that an ALJ's credibility determination of a claimant must be "accorded great weight and deference"). Instead, Plaintiff generally points to her testimony about her pain and her treatment history as evidence she would be excessively off-task or absent from work. (Doc. 9 at 3–4). Yet Plaintiff did not testify to needing any specific off-task time, breaks, or additional absences from work. (*See* R. at 40–58); *David S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-25, 2022 WL 3586160, at *7 n.7 (S.D. Ohio Aug. 22, 2022) (stating that plaintiff's argument for limitations based on off-task time were not supported by his own testimony or evidence in the record).

More still, the objective medical evidence in the record does not support the limitations Plaintiff now requests. For example, Plaintiff cites no medical evidence stating she would be off task more than 10% of the workday or that she would have multiple unexcused absences a month. (*See* Doc. 9 at 3–5); *Burton v. Comm'r of Soc. Sec. Admin.*, No. 3:19-cv-313, 2021 WL 388768, at *4 (S.D. Ohio Feb. 4, 2021) ("Plaintiff, however, has not pointed to evidence indicating that she needed a greater amount of off-task time. Without such evidence, there was no basis for the ALJ to find that Plaintiff need[s] more[.]"). Nor did Plaintiff's treating providers recommend these limitations. *See Miller v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-506, 2021 WL 4745430, at *3 (S.D. Ohio Oct. 12, 2021) (stating that none of the plaintiff's medical records supported the work-preclusive limitations she believed should have been included in her RFC); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) ("The physicians who treated Ealy for these things never recommended any ongoing significant restrictions.").

Additionally, none of the medical opinions in the record support these limitations. *See Audrey M. v. Comm'r of Soc. Sec.*, 2:21-cv-945, 2022 WL 831321, at*5 (S.D. Ohio Mar. 21, 2012)

(finding that no medical source opined that the plaintiff needed more off-task time in affirming the ALJ's decision); *Foust v. Comm'r of Soc. Sec.*, No. 2:20-cv-616, 2020 WL 4381623, at *4 (S.D. Ohio July 31, 2020) (same). For example, Dr. Robert Kurzhals conducted a mental status exam on Plaintiff. (R. at 1281–85). While he found Plaintiff has some limitation in sustaining concentration and work-related activities, he did not recommend limitations for off-task time or say Plaintiff would be habitually absent from work. (R. at 1284–85). In addition, after examining Plaintiff's mental health treatment records, state agency psychologists Dr. Larry Kravitz and Robyn Murray-Hoffman, Psy.D., determined Plaintiff had only moderate limitations in her ability to concentrate, persist, or maintain pace. (R. at 69, 78). In support, they noted that examinations showed "normal concentration and attention." (R. at 71, 79; *see also* R. at 377, 440, 520, 535, 555, 563, 566, 582, 960, 1054, 1335).

For Plaintiff's physical conditions, agency consultants Maureen Gallagher, D.O., and Steve McKee, M.D., reviewed her medical records and found that despite her reported pain, Plaintiff often showed normal gait and station upon examination. (R. at 71, 79; *see, e.g.*, R. at 438, 508, 532, 535, 555, 571, 578, 601, 611, 643, 1053, 1075, 1085, 1101, 1138, 1144, 1164, 1181, 1187, 1234, 1242, 1247). They also found Plaintiff could sit with normal breaks for about six hours of an eight-hour workday and that she could stand and walk with normal breaks for about four hours a day. (R. at 71, 80). In sum, none of these medical opinions support the limitations for which Plaintiff argues.

What's more, the ALJ did not completely ignore Plaintiff's subjective reports of her pain. For example, Plaintiff argues that the ALJ failed to account for the effect her pain would have on her "ability to stay on task or be present at work." (Doc. 9 at 4). Yet the ALJ limited her to "[n]o work at unprotected heights, around moving mechanical parts, or operating a motor vehicle,"

9

because Plaintiff's "pain symptoms prevent her from having such consistent ability" and give her concentration deficits. (R. at 23, 27). Because of her pain, the ALJ also limited her to sedentary work, which "significantly limits the total amount of time that [Plaintiff] can be expected to stand and/or walk during the workday, and severely caps the amount of weight she can be required to lift." (R. at 27). Even more, the ALJ added reaching limitations to her RFC because of her pain. The ALJ noted that reaching limitations would "restrict [Plaintiff] from jobs that involve tasks likely to exacerbate her pain symptoms, or. . . that her pain symptoms would simply prevent her from effectively undertaking." (*Id.*). These facts show that the ALJ accounted for Plaintiff's reports of her pain, to the extent that he found them credible, and incorporated appropriate limitations into her RFC.

Finally, Plaintiff argues that the ALJ did not adequately consider the vocational expert's testimony. (Doc. 9 at 4–5). Plaintiff says the ALJ erred by not including limitations for off-task time and absences from work, because the vocational expert testified that employers only tolerate 10% off-task time and one unexcused absence per month. (*Id.*). Yet the vocational expert's testimony did not mean that Plaintiff required these work-preclusive limitations. Rather, the vocational expert generally testified as to how much time off-task and how many absences from work employers would tolerate. (*See* R. at 62). Here, the ALJ was required "only incorporate the limitations he deem[ed] credible." *Miller*, 2021 WL 4745430, at *3. After considering the record as a whole and explaining his credibility determinations, the ALJ ultimately decided not to include greater limitations for off-task time and absences from work. *See Vickers v. Comm'r of Soc. Sec.*, No. 20-1935, 2021 WL 4468414, at *5 (6th Cir. July 12, 2021) ("The ALJ did not incorporate this limitation because she found that Vickers's subjective complaint in this regard was less than credible."). Accordingly, the Court finds no error.

10

IV.     **CONCLUSION**

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 9) is **OVERRULED** and that judgment be entered in favor of Defendant.

IT IS SO ORDERED.

Date:   April 15, 2024                                                /s/ Kimberly A. Jolson
                                                                                      KIMBERLY A. JOLSON
                                                                                      UNITED STATES MAGISTRATE JUDGE